IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE PROSPECTOR OFFSHORE DRILLING S.à r.l., *et al.*, | : : : | Chapter 11 |
| Debtor. | : : : | Case No. 17-11572 (CSS) |
| MICHAEL R. HAMMERSLEY, | : : | |
| Appellant, | : : : | |
| v. | : : : | Civ. No. 18-367-LPS<br>Civ. No. 18-368-LPS<br>Civ. No. 18-734-LPS |
| PROSPECTOR OFFSHORE DRILLING S.à r.l., *et al.*, | : : : | CONSOLIDATED APPEAL |
| Appellees. | : : | |

## **MEMORANDUM**

This dispute arises in the Chapter 11 cases[1] of Prospector Offshore Drilling S.à r.l. ("Prospector Parent"), Prospector Rig 1 Contracting Company S.à r.l., Prospector Rig 5 Contracting Company S.à r.l., and Paragon Offshore plc (in administration)[2] (collectively "Appellees"). Presently before the Court is Appellees' motion to dismiss (Civ. No. 18-367-LPS, D.I. 62) ("Motion to Dismiss") three *pro se* appeals filed by equity holder Michael R. Hammersley ("Appellant"), including: (1) *Notice of Appeal of the Order (I) Approving Form of Order Pursuant to Sections 105(a) 305(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rules 1017 and 6007 Authorizing Dismissal of the Debtors' Case and (II) Granting Related Relief* (*Prospector* D.I. 376),

---

[1] *In re Prospector Offshore Drilling S.à r.l., et al.*, Case No. 17-11572 (CSS) (Bankr. D. Del.). The docket of the Prospector Cases is cited herein as "*Prospector* D.I. __." Appellees' Chapter 11 cases were dismissed on March 27, 2018.

[2] The mailing address for Paragon Offshore plc (in administration) is c/o Deloitte LLP, Four Brindleyplace, Birmingham, B1 2HZ, United Kingdom. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "Joint Administrators"). The affairs, business, and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

1

Civ. No. 18-367 (LPS) (the "First Appeal"); (2) *Notice of Appeal of the Order Pursuant to Sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving the Settlement Agreement Between the Debtors, SinoEnergy, the Prospector Corporations, Paragon Offshore Limited, and the Administrators* (*Prospector* D.I. 378), Civ. No. 18-368 (LPS) (the "Second Appeal"); and (3) *Notice of Appeal of the Order Denying Motion to Vacate Order Authorizing Dismissal of the Debtors' Cases Pursuant to Rule 60(b)(4)(5)(6)* (*Prospector* D.I. 432), Civ. No. 18-734 (LPS) (the "Third Appeal," and together with the First Appeal and the Second Appeal, the "Consolidated Appeals"). For the reasons that follow, the Court will grant Appellees' Motion to Dismiss and will also deny Appellant's "Motion for Summary Judgment" (D.I. 58).

## I. BACKGROUND

### A. Paragon Cases and Related Appeals

Prior to the commencement of the above-captioned cases (the "Prospector Cases"), on February 14, 2016, Paragon Offshore plc ("Paragon Parent") and certain of its affiliates (collectively, the "Paragon Debtors") filed for Chapter 11 protection and commenced the Paragon Cases.[3] Paragon Parent was the sole equity owner of Appellee Prospector Parent. Prospector Parent was the sole equity owner of Appellees Prospector Rig 1 Contracting Company S.à r.l. and Prospector Rig 5 Contracting Company S.à r.l., and it owned (either directly or indirectly) certain subsidiaries (collectively, the "Prospector Entities"). The Prospector Entities were not debtors in the Paragon Cases.

Appellant is a shareholder of Paragon Parent. Appellant does not own equity in any of the Prospector Entities. In March of 2017, a group of purported shareholders of Paragon Parent, including Appellant (together, the "Unofficial Equity Committee"), filed a motion to appoint an

---

[3] *In re Paragon Offshore plc*, Case No.16-10386 (CSS) (Bankr. D. Del.). The docket of the Paragon Cases is cited herein as "*Paragon* D.I. \_\_."

official equity committee in the Paragon Cases. Following an evidentiary hearing, the Bankruptcy Court denied the Unofficial Equity Committee's motion, finding, *inter alia*, that "equity [was] so . . . underwater that it would take, literally, a billion dollars or significantly more, maybe a billion three, a billion four, to put equity in the money." (3/27/17 Hr'g Tr. at 68)

After three rounds of confirmation spanning over a year, the Paragon Debtors' Plan was confirmed by the Bankruptcy Court pursuant to a Confirmation Order entered on June 7, 2017. At the confirmation hearing, the Bankruptcy Court overruled an objection of the Unofficial Equity Committee (of which Appellant was a member) concerning equity's treatment under the Plan, finding that "the evidence overwhelmingly indicate[s] there's at least $1.3 to $1.5 billion of shortfall before you get to a place where there would be any return to equity." (6/7/17 Hr'g Tr. at 59)

The Plan provides, in relevant part, (i) that equity interests in Paragon Parent "shall be deemed valueless and shall not receive any distribution under the Plan" (*see Paragon* D.I. 1459, Plan at § 4.8); (ii) through a corporate restructuring, the Prospector Entities, among other assets, would be transferred to New Paragon; and (iii) creditors senior to equity holders of Paragon Parent would receive all of the equity in New Paragon. (*See id.* §§ 4.3, 4.4, 5.3, & 5.13) Specifically, section 1.1 of the Plan defines "Transferred Subsidiary" as "any of the Paragon Entities other than the Liquidating Subsidiaries," which would include the Prospector Entities. (Plan at § 1.1) "Corporate Restructuring" is defined as "the reorganization of the Paragon Entities' corporate structure in accordance with the Plan and the U.K. Implementation Agreement through which the Transferred Subsidiaries will be transferred to Reorganized Paragon." (*Id.*) "Paragon Entities" is defined as the "Paragon Parent together with its Debtor and non-Debtor direct and indirect subsidiaries." (*Id.*) "Reorganized Paragon" is defined as "a new company, which shall be classified as an association taxable as a corporation for U.S. federal income tax purposes, which shall become

the holding company for the Transferred Subsidiaries." (*Id.*)

However, due to a commercial dispute between the Prospector Entities and their primary creditors in connection with certain sale-leaseback agreements, the Paragon Debtors were unable to obtain the requisite consents to transfer the Prospector Entities to New Paragon prior to the Effective Date of the Plan. Consequently, On July 11, 2017, the Paragon Debtors filed a motion seeking approval of modifications to the Plan. (*Paragon* D.I. 1760) Specifically, Paragon Parent agreed to, *inter alia*, transfer its shares in Prospector Parent, and thus the Prospector Entities, to New Paragon upon satisfaction of certain conditions, including that obligations under the terms of the sale-leaseback agreements were discharged in full and encumbrances – including those over Paragon Parent's shares in Prospector Parent – were released. On July 17, 2017, the Bankruptcy Court entered an order approving the Plan modifications. (*Paragon* D.I. 1775) On July 18, 2017, the Plan, as modified, went effective. (*Paragon* D.I. 1792)

Appellant has filed three appeals in the Paragon Cases, two of which relate to the confirmed Plan. On June 21, 2017, Appellant and Marcel de Groot, another equity holder of Paragon Parent, together appealed the Confirmation Order ("Confirmation Order Appeal"). (Civ. No. 17-802-GMS D.I. 1) On June 27, 2017, Appellant and de Groot moved for stay pending appeal, which was denied by the Bankruptcy Court (*Paragon* D.I. 1736) and this Court (Civ. No. 17-802-GMS D.I. 9). Appellant and de Groot subsequently withdrew the Confirmation Order Appeal. (*Id.* at D.I. 10)

On December 4, 2017, four months after the Paragon Debtors' Plan went effective, Appellant filed a motion to revoke the Plan Modification Order. (*Paragon* D.I. 2000) On January 3, 2018, the Debtors filed an objection to the motion to revoke (*Paragon* D.I. 2032) to which Appellant filed a reply (*Paragon* D.I. 2039). The Bankruptcy Court denied the motion to revoke (*Paragon* D.I. 2047) ("Order Denying Revocation"). On January 25, 2018, Appellant timely appealed the Order Denying Revocation and sought a stay pending appeal. (*Paragon* D.I. 2055,

2058) Following a hearing, on February 21, 2018, the Bankruptcy Court denied Appellant's motion for stay pending appeal (*Paragon* D.I. 2089). Appeal of the Order Denying Revocation is pending at Civ. No. 18-157-LPS.

### B. Prospector Cases

Paragon Parent is the sole equity owner of Prospector Parent. Prospector Parent is the sole equity owner of Prospector Rig 1 Contracting Company S.à r.l. ("Prospector Rig 1") and Prospector Rig 5 Contracting Company S.à r.l. ("Prospector Rig 5"), and owns (either directly or indirectly) certain non-debtor subsidiaries (collectively, the "Prospector Entities"). The Prospector Entities' primary assets are two high specification jackup rigs located in the U.K. North Sea: Prospector 1 Rig and Prospector 5 Rig (collectively, the "Rigs"). Each rig is subject to an agreement whereby the Rigs were purportedly (i) sold to Prospector One Corporation and Prospector Five Corporation (the "Prospector Corporations"), respectively, subsidiaries of SinoEnergy Capital Management, Ltd. ("SinoEnergy"), by Prospector Parent's non-Debtor subsidiaries, and (ii) contemporaneously leased back by Prospector Rig 1 and Prospector Rig 5 (collectively, the "Contracting Debtors").

To secure the obligations arising under the lease agreements dated June 3, 2015 (the "Sale-Leaseback Agreements"), the Contracting Debtors granted, among other things, security interests in their rights, title, and interest in the monies credited, paid, or caused to be credited to certain pledged accounts and all proceeds to Industrial and Commercial Bank of China, New York Branch ("ICBC"). As additional security, Paragon Parent pledged its shares in Prospector Parent in favor of ICBC, and Prospector Parent issued guarantees and pledged its shares in the Contracting Debtors to ICBC.

On July 20, 2017, Appellees commenced the Prospector Cases under Chapter 11 of the Bankruptcy Code to protect the Prospector Debtors' interest in the Rigs and to maximize the value of their assets by working towards resolving the dispute arising under the Sale-Leaseback

5

Agreements with SinoEnergy. On February 14, 2018, the Prospector Debtors entered into a settlement agreement (the "Settlement Agreement") with SinoEnergy, the Prospector Corporations, New Paragon, and the Joint Administrators. The Prospector Debtors subsequently filed motions seeking approval of the Settlement Agreement and dismissal of the Prospector Cases. Following a hearing held on March 5, 2018, the Bankruptcy Court entered orders (i) approving the Settlement Agreement (*Prospector* D.I. 369) (the "Settlement Order") and (ii) authorizing the dismissal of the Prospector Cases upon satisfaction of certain conditions (*Prospector* D.I. 368) ("Order Authorizing Dismissal"). No Chapter 11 confirmation plan was ever proposed to or ordered by the Bankruptcy Court.

On March 8, 2018, Appellant appealed the Settlement Order and the Order Authorizing Dismissal. Following the Bankruptcy Court's denial of Appellant's request to stay these orders pending appeal,[4] Appellant filed an emergency motion for stay in this Court. (Civ. No. 18-367-LPS D.I. 5; Civ. No. 18-368-LPS D.I. 5) After considering Appellant's motion for stay, the Prospector Debtors' objection, and Appellant's reply, the Court denied the motion (the "Stay Denial Order"),[5] finding that Appellant failed to establish: (i) a reasonable likelihood of success on the merits or (ii) that he would suffer irreparable harm absent a stay. On March 26, 2018, Appellant filed an emergency motion with the Third Circuit Court of Appeals with respect to the Stay Denial Order and, on March 28, 2018, the Third Circuit entered an order denying Appellant's emergency motion for stay pending appeal of the Settlement Order and Order Authorizing Dismissal.[6]

---

[4] *See* 3/5/17 Hr'g Tr. at 23 (denying oral motion to stay Settlement Order and Order Authorizing Dismissal).

[5] Civ. No. 18-367-LPS D.I. 37; Civ. No. 18-368 D.I. 37.

[6] *In re Prospector Offshore Drilling S.a. r.l., et al.*, Case Nos. 18-1652 & 18-1653 (3d Cir. Mar. 28, 2018) D.I. 003112887688.

6

### C. Consummation of Settlement Agreement, Transfer of Prospector Entities, Dismissal of Prospector Cases, and Closing of the Borr Transaction

On February 26, 2018, Borr Drilling Limited ("Borr Drilling") announced the commencement of a tender offer to purchase 100% of New Paragon's outstanding equity, in an all-cash transaction totaling $232.5 million (the "Borr Transaction"). In addition, Borr Drilling agreed to satisfy approximately $90 million in Take Back Debt (including interest) owed by New Paragon. As conditions precedent to closing the Borr Transaction, (i) New Paragon was required to complete all actions necessary to acquire ownership of the Prospector Entities (which required, *inter alia*, consummation of the Settlement Agreement) and (ii) the Bankruptcy Court had to have entered an order dismissing the Prospector Cases. On March 27, 2018, the parties consummated the Settlement Agreement, Paragon Parent's shares in Prospector Parent were transferred to New Paragon, and the Bankruptcy Court dismissed the Prospector Cases pursuant to the Order Authorizing Dismissal. On March 29, 2018, the Borr Transaction closed.

The day before, on March 28, 2018, Appellant had filed a motion to vacate the Bankruptcy Court's Order Authorizing Dismissal ("Motion to Vacate"). (*Prospector* D.I. 407) On May 9, 2018, the Bankruptcy Court denied the Motion to Vacate (the "Order Denying the Motion to Vacate"). (*Prospector* D.I. 428) On May 15, 2018, Appellant filed the Third Appeal of the Bankruptcy Court's Order Denying the Motion to Vacate (hereinafter, together with the Settlement Order and the Order Authorizing Dismissal, the "Appealed Orders").

### D. Dispositive Motions

On June 8, 2018, Appellees and Appellant (collectively, the "Parties") filed a stipulated consent order (the "Stipulation") under Federal Rule of Bankruptcy Procedure 8003(b)(2) to consolidate, for procedural purposes, the First Appeal, the Second Appeal, and the Third Appeal. On June 11, 2018, the Court signed the Stipulation, thereby creating the Consolidated Appeal. (Civ.

7

No. 18-367-LPS at D.I. 53) In accordance with the briefing schedule and deadline for dispositive motions, on July 2, 2018, Appellees filed their Motion to Dismiss, asserting two grounds: (1) Appellant lacks standing to bring the Consolidated Appeal, and (2) the Consolidated Appeal is equitably moot. (*See* D.I. 62) The same day, Appellant filed a "Motion for Summary Judgment" (D.I. 58) and opening brief in support (D.I. 60), to which many equity holders filed joinders,[7] along with a "Statement of Uncontested Material Facts and Appendix" (D.I. 61). On July 13, 2018, Appellant filed an answering brief in opposition to the Motion to Dismiss (D.I. 63), to which Appellees later filed their reply (D.I. 66). The Motion to Dismiss is fully briefed. Appellees have objected to the "Motion for Summary Judgment" as procedurally improper (D.I. 64), and Appellant has filed a reply (D.I. 68). Appellant has also filed two letters regarding subsequent rulings. (D.I. 102, 103) Additionally, Appellant filed a request for oral argument (D.I. 95, 97), which Appellees opposed (D.I. 96). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

As an initial matter, the Court agrees with Appellees that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is procedurally improper. Appeals from the Bankruptcy Court to the District Court are governed by Part VIII of the Federal Rules of Bankruptcy Procedure, which are substantially similar to the Federal Rules of Appellate Procedure. The Bankruptcy Rules that govern this appeal contain no rule like Rule 56. The purpose of a summary judgment motion is to determine whether there is a genuine issue of material fact that would require resolution by a trial. But this is an appeal, not a trial process. Summary judgment is not applicable. However, because Appellant proceeds *pro se*, the Court construes his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be

---

[7] *See* Civ. No. 18-367-LPS D.I. 69-94, 98.

8

liberally construed.") (internal quotation marks omitted). The Court has, therefore, considered all of the papers filed by the parties in this appeal. The Court will consider the arguments raised by Appellant in his Motion for Summary Judgment in the context of, and in response to, Appellant's motion to dismiss.

## II. PARTIES' CONTENTIONS

Appellees argue that the Consolidated Appeal should be dismissed because Appellant does not have standing to prosecute it. According to Appellees, Appellant cannot establish that he suffered pecuniary harm as a result of entry of the Appealed Orders: Appellant has no economic interest in the Prospector Entities and, as a holder of valueless equity in Paragon Parent, Appellant was not entitled to recovery under the Plan confirmed in the prior bankruptcy proceedings of Paragon Parent. Even if each of the Appealed Orders were reversed, Appellees argue, such relief would have no impact on Appellant, who would still have no economic interest in the Prospector Entities and would still not be entitled to a recovery under Paragon Parent's Plan. Because Appellant has no pecuniary interest in either the Prospector Entities or Paragon Parent, and such interest, or lack thereof, remained unaffected by the entry of the Appealed Orders, Appellant's Consolidated Appeal should be dismissed for lack of standing.

Appellees further argue that, even if this Court could conceivably find standing in this context, the Consolidated Appeal should be denied as equitably moot. Appellees assert that all of the relevant transactions in both the Paragon Cases and the Prospector Cases have been approved by non-stayed final orders and those transactions and have been fully consummated. As a practical matter, Appellees contend, the multitude of transactions already undertaken cannot be unwound, and any attempt to do so would be catastrophic for Appellees, their creditors, and third parties, all of whom have relied on such orders and the transactions executed in connection therewith.

Appellant counters that equitable mootness has no application to the Consolidated Appeal because no Chapter 11 plan was confirmed in the Prospector Cases. (D.I. 63 at 2) Through the Consolidated Appeal, Appellant seeks to (i) disgorge the sale proceeds paid by Borr Drilling for Paragon Parent's interest in Prospector from New Paragon back to Paragon Parent and (ii) distribute those proceeds in accordance with § 1129(B)(2)(B)(ii). (*Id.* at 3) Appellant argues that the Settlement Order and Dismissal Order, which transferred Paragon Parent's interests in Prospector to New Paragon, did not comply with the absolute priority rule, adding: "[c]onsidering that the shareholders of New Paragon never had an entitlement to Prospector or its proceeds 'it would not be inequitable to require the parties to that agreement to disgorge their ill-gotten gains, participation in the appeal or not.'" (*See id.*) (quoting *In re One2One Commc'ns, LLC*, 805 F.3d 428, 453 (3d Cir. 2015)) Appellant asserts that if the Court grants relief and orders that the proceeds be disgorged from New Paragon back to Paragon Parent and distributed under the absolute priority rule, "a portion of the residual value of the proceeds from Paragon Parent's interest in Prospector will be distributed to Appellant and Paragon Parent's Shareholders." (*Id.* at 4) With respect to standing, Appellant insists that a loss of even a small amount of money is ordinarily an injury. (*See id.*)

## III. JURISDICTION

This Court has jurisdiction with respect to appeals as to all final judgments, orders, and decrees of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Settlement Order is a final order. *See In re Cajun Electric Power Coop., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997) (holding that bankruptcy court's approval of settlement order that ends litigation between parties is "final" order). The Order Authorizing Dismissal is also a final order because it resulted in dismissal of the Chapter 11 cases. *See In re Caterbone*, 2016 WL 2851625, at *2 (E.D. Pa. May 16, 2016) ("A bankruptcy court's dismissal of a Chapter 11 case is a final order.") (internal citation omitted). Therefore, the Order Denying the Motion to Vacate, filed with respect to the Order Denying Dismissal, is also a

final order. *See Cadle Co. v. Fisher*, 562 F.3d 369, 371 (5th Cir. 2009) (order denying motion to vacate is "final" order).

## IV. DISCUSSION

### A. Appellate Standing

#### 1. "Person Aggrieved" Requirement

Although the Bankruptcy Code does not contain a provision for appellate standing, the Third Circuit has recognized that standing is a prerequisite to proceeding on appeal. *See In re Richardson Indus. Contractors, Inc.*, 189 Fed. App'x 91 (3d Cir. 2006) (citing *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). Appellate standing in bankruptcy is limited to "persons aggrieved" by an order of the Bankruptcy Court. *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)). The persons aggrieved test "now exists as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court." *Combustion*, 391 F.3d at 214 (internal quotation marks omitted). To be a person aggrieved, a party must challenge an order that "diminishes [its] property, increases [its] burdens, or impairs [its] rights." *Id.* (internal quotation marks omitted). This standard is "more restrictive than the case or controversy" standing requirement of Article III, which requires an injury that "need not be financial and need only be fairly traceable to the alleged illegal action." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (internal quotation marks omitted). The Third Circuit has also found a lack of appellate standing in parties "who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not directly affected by that order." *Id.* (internal quotation marks omitted). These requirements are rooted in the "particularly acute need to limit appeals in bankruptcy proceedings, which often involve a myriad of parties . . . indirectly affected by every bankruptcy court order." *Id.* (internal quotation marks omitted).

11

Whether an appellant is a "person aggrieved" is generally considered a question of fact for the District Court. *Dykes,* 10 F.3d at 188; *Travelers,* 45 F.3d at 742.

Appellant argues that "Judge Sontchi has emphatically ruled that 'the shareholders clearly have standing here and can be heard on any of these issues'" and that Appellees have conceded that Paragon Parent's equity holders were the only equity holders involved in the Chapter 11 cases. (D.I. 63 at 19) (citing 3/27/17 Hr'g Tr. at 71-72) Appellees counter that "Appellant conflates standing in the Bankruptcy Court with standing on appeal." (D.I. 66 at 2) The Court agrees with Appellees.

As an equity holder of Paragon Parent, Appellant clearly had standing to appear and be heard in the Bankruptcy Court. The Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). While this provision "confers broad standing at the trial level," "courts do not extend that provision to appellate standing." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000). Although the Bankruptcy Code does not contain any express restrictions on appellate standing, the Third Circuit "has emphasized that appellate standing in bankruptcy cases is limited to 'person[s] aggrieved.'" *Id.* Thus, while the Bankruptcy Court's statement is consistent with the broad right of a party in interest to be heard in Chapter 11 cases ***in the Bankruptcy Court***, it cannot be read as conferring appellate standing on equity holders. The appellate standing standard is necessarily more stringent: "if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988).

## 2. Appellant Is Not a "Person Aggrieved" By the Appealed Orders

Appellees argue that because Appellant does not have a financial interest in the Prospector Entities, he does not have a pecuniary stake in the Settlement Order or the Order Authorizing Dismissal. Appellant will not be in a better position (as a holder of valueless equity in Paragon Parent) if this Court reopens the Prospector Cases and reverses Appellees' settlement with its primary creditor, SinoEnergy; thus, according to Appellees, the Appealed Orders did not diminish Appellant's property, increase Appellant's burdens, or impair Appellant's rights. Conversely, Appellant argues that the Settlement Order and Dismissal Order – which transferred Paragon Parent's interests in Prospector to New Paragon – did not comply with the absolute priority rule; if the Court grants the relief sought on appeal, and orders that the proceeds be disgorged from New Paragon back to Paragon Parent to be distributed under the absolute priority rule, "a portion of the residual value of the proceeds from Paragon Parent's interest in Prospector will be distributed to Appellant and Paragon Parent's Shareholders." (*Id.* at 4)

Appellant's position is simply not supported by the record. Appellant has argued repeatedly that "Prospector was not part of the [Paragon] bankruptcy estate or contemplated in the bankruptcy plan" and that he and other equity holders had a "residual interest" in the Prospector Entities. The Bankruptcy Court has rejected several times Appellant's argument that he, as a shareholder of Paragon Parent, had any economic interest in the Prospector Entities. (*See* 11/30/17 Hr'g Tr. at 24) (rejecting Appellant's argument that he has equity interest in Prospector Entities as "just incorrect as a matter of corporate law"). This Court agrees with the Bankruptcy Court.

Appellant further argues that the Prospector Entities were not subject to the Paragon Parent Plan and, thus, Paragon Parent's interest in the Prospector Entities could not have been transferred.

13

(*See* D.I. 63 at 16, 18) In fact, however, the Prospector Entities are addressed in the Paragon Plan.[8] Although the Prospector Entities were not debtors themselves in the Paragon Cases, the equity of those entities constituted part of the assets of the Paragon Debtors and was subject to the Plan and jurisdiction of the Bankruptcy Court for the Paragon Cases. This is supported by the record.

Appellant further argues that Prospector was excluded from collateral available to satisfy Paragon obligations, and he and other equity holders are entitled to this value, which was lost pursuant to the Appealed Orders. "When New Paragon's shareholders all agreed to exclude

---

[8] Section 1.1 of the Paragon Parent's Plan defines "Transferred Subsidiary" as "any of the Paragon Entities other than the Liquidating Subsidiaries," and, hence, includes the Prospector Entities. (*Paragon* D.I. 1459, Plan at ¶ 1.1) "Corporate Restructuring" is defined as "the reorganization of the Paragon Entities' corporate structure in accordance with the Plan and the U.K. Implementation Agreement through which the Transferred Subsidiaries will be transferred to Reorganized Paragon." (*Id.*) "Paragon Entities" is defined as "Paragon Parent together with its Debtor and non-Debtor direct and indirect subsidiaries." (*Id.*) "Reorganized Paragon" is defined as "a new company, which shall be classified as an association taxable as a corporation for U.S. federal income tax purposes, which shall become the holding company for the Transferred Subsidiaries." (*Id.*)

Additionally, the value of the Prospector Entities was included in the estimate of value going to the Paragon Parent's creditors under the Plan. As the Bankruptcy Court found: "With regard to the equity committee objections on valuation, again, the evidence here overwhelmingly supports the debtors' valuation. . . . And the evidence overwhelmingly indicates there's at least $1.3 to $1.5 billion of shortfall before you get to a place where there would be any return to equity." (6/7/17 Hr'g Tr. at 59; *see also id.* at 59 (rejecting Appellant's valuation arguments); 11/30/17 Hr'g Tr. at 23 (Bankruptcy Court finding that its previous determinations that equity was out of the money "*included a valuation of the Prospector entities*; i.e., the value of the debtors' equity in those entities as part of the finding that the value was insufficient to put . . . equity in the money") (emphasis added))

These findings are supported by the record. For instance, the Paragon Debtors' evidence regarding valuation of the Reorganized Debtors, including estimated enterprise value, also clearly states that it included the value of the Prospector Entities. (*Paragon* D.I. 1591 at ¶¶ 5, 7 ("Lazard advised the Debtors with respect to the going concern reorganization value of the Reorganized Debtors, *including the enterprise value of Prospector Offshore Drilling SA* (collectively, with its subsidiaries, 'Prospector') and, for all purposes, included the defined term ("*Reorganized Debtors*") . . . Lazard analyzed Prospector separately from the other Reorganized Debtors, and estimated a range of enterprise value implied by the DCF methodology for Prospector of $275 million to $325 million. *The range for Prospector was then added to the estimated enterprise value range for the remainder of the Reorganized Debtors of $250 million to $400 million to arrive at the total range referenced above.*") (emphasis added))

14

Prospector from their collateral by designating it as an 'Unrestricted Subsidiary' in 2014, they precluded themselves from being able to share in the proceeds of the Prospector Entities." (D.I. 63 at 14) Appellant observes that Paragon Parent's credit agreements expressly warn that unrestricted subsidiaries will not respond in the event of a default of Paragon Parent's restricted subsidiaries. Thus, Appellant asserts that the proceeds from Paragon Parent's interest in the Prospector Entities should be disgorged and distributed to Appellant and equity holders of Paragon Parent in accordance with the absolute priority rule. (D.I. 63 at 19)

The record reflects, however, that Paragon Parent had both secured and unsecured debt standing ahead of equity holders for recovery. (*See Paragon* D.I. 1460) The fact that the Prospector Entities were not collateral for Paragon Parent's secured debt does not mean that the economic benefit of the Prospector Entities bypasses Paragon Parent's unsecured creditors, including the deficiency claim of Paragon Parent's secured creditors, and goes to Paragon Parent's equity holders. Under the Paragon Plan and Management Agreement, New Paragon was an unsecured creditor of Paragon Parent, and Paragon Parent agreed to transfer its entire interest in the Prospector Entities to New Paragon (upon satisfaction of certain conditions in the Management Agreement) in partial satisfaction of that unsecured debt. Thus, in the Prospector Cases, New Paragon is a creditor and stands ahead of Appellant. (*Paragon* D.I. 1586)

Pursuant to the absolute priority rule, Paragon Parent's equity holders cannot recover any proceeds, including those related to the Prospector Entities, until the secured and unsecured creditors in front of them have been paid in full. Even if this Court could somehow disgorge the proceeds of the Prospector Entities back to Paragon Parent, Appellant would recover nothing because Paragon Parent is still required to pay all such proceeds to New Paragon in satisfaction of its obligations to New Paragon.

15

Appellant cites the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 976 (2017), as further support for being found to have appellate standing. (*See* D.I. 63 at 4) Jevic filed for Chapter 11 after being purchased in a leveraged buyout. The bankruptcy prompted two lawsuits. In the first, petitioners, a group of former Jevic employees, were awarded judgment for Jevic's failure to provide proper notice of termination in violation of state and federal WARN Acts. Part of that judgment counted as a priority wage claim under § 507(a)(4), entitling the employees to payment ahead of general unsecured claims. In the second suit, Jevic's unsecured creditors sued Sun Capital and CIT Group for fraudulent conveyance in connection with the leveraged buyout. These parties negotiated a settlement agreement that called for a structured dismissal of Jevic's Chapter 11 cases. Under the proposed structured dismissal, petitioners would receive nothing on their WARN claims and lower-priority, general unsecured creditors would be paid. Petitioners argued that this distribution scheme violated the Bankruptcy Code's priority rules by paying general unsecured claims ahead of their own.

The Bankruptcy Court approved the settlement agreement and dismissed the case, reasoning that because the proposed payouts would occur pursuant to a structured dismissal rather than an approved plan, the failure to follow ordinary priority rules did not bar approval. The Supreme Court reversed, holding that bankruptcy courts may not approve structured dismissals that provide for distributions that do not follow ordinary priority rules without the consent of affected creditors. *See id.* at 976-77.

With respect to standing, the Supreme Court rejected respondents' argument that petitioners suffered no injury

> because petitioners would have gotten nothing even if the Bankruptcy Court had never approved the structured dismissal and will still get nothing if the structured dismissal is undone now. That argument rests upon the assumptions that (1) without a violation of ordinary priority rules, there will be no settlement, and (2) without a settlement, the fraudulent-conveyance lawsuit has no value. The record, however,

16

> indicates both that a settlement that respects ordinary priorities remains a reasonable possibility and that the fraudulent-conveyance claim could have litigation value. Therefore, as a consequence of the Bankruptcy Court's approval of the structured dismissal, petitioners lost a chance to obtain a settlement that respected their priorities or, if not that, the power to assert the fraudulent-conveyance claim themselves.

*Id.* at 976.

*Jevic*, while instructive, does not support Appellant's argument for appellate standing. Appellant has not lost a chance at a settlement of his equity interests that respects the absolute priority rule. Appellant had no economic interests at stake in the Settlement Order and Dismissal Order. Moreover, as set forth above, the Paragon Plan – including the related Management Agreement entered into by Paragon Parent, New Paragon (owned by Paragon Parent's secured and unsecured creditors), and the Joint Administrators, whereby New Paragon received the economic benefits of the Prospector Entities – is consistent with the absolute priority rule.

The cases cited by Appellees are more aligned with the facts of this case. *See, e.g., Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010) (finding that shareholder of debtor lacked standing to appeal order confirming plan because, as equity holder, he did not have "pecuniary interest at stake" where, "[u]nder the Plan, the secured creditors only recovered 42% of their claims and the general unsecured creditors only recovered 9% of their claims"); *see also In re Richardson Indus. Contractors, Inc.*, 189 F. App'x 91, 93 (3d Cir. 2006) (dismissing appeal for lack of standing where appellant-unsecured creditor "would not be in any better position" because order determined priority of secured creditors who "[would] be entitled to recover any remaining proceeds before [appellant]"); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 496 (3d Cir. 1998) (finding appellant lacked standing where "Chrysler has not shown how its interest will be affected whether the franchises are transferred to Krebs under the buy-sell agreement or via the auction sale"); *In re Hawkins*, 513 B.R. 634, 638 (D. Del. 2013) (dismissing

17

appeal of order denying purported creditor's motion to reopen cases where denial order did not provide for "any administration of the estate" and appellant had "no interest in the property at issue . . . [or] in the proceeds from the sale of the property at issue"), *aff'd* 594 F. App'x 71, 73 (3d Cir. 2015) ("[W]e agree[] that the Bankruptcy Court's order does not have a direct, pecuniary effect.").

The Court concludes that the Appealed Orders, which approved the settlement and authorized dismissal of the Prospector Cases, did not diminish Appellant's property, increase Appellant's burdens, or impair Appellant's rights. Because Appellant's rights or interests were not "directly and adversely affected pecuniarily" by the Appealed Orders, Appellant lacks standing to prosecute the Consolidated Appeal. *PWS Holding*, 228 F.3d at 249. Accordingly, the Consolidated Appeal must be dismissed.

### C.     Equitable Mootness

Appellees also urge the Court to dismiss the Consolidated Appeal on the basis of equitable mootness, because the Consolidated Appeal is merely a collateral attack on the Plan confirmed in the Paragon Cases, which has been fully consummated. Appellant argues that equitable mootness doctrine has no application here.

Following confirmation of a reorganization plan by a bankruptcy court, an aggrieved party has the statutory right to appeal the court's rulings. *See In re SemCrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013). Once there is an appeal, there is a "virtually unflagging obligation" of federal courts to exercise the jurisdiction conferred on them. *Id.* (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Before there is a basis to forgo jurisdiction, granting relief on appeal must be almost certain to produce a perverse outcome – chaos in the bankruptcy court from a plan in tatters and/or significant injury to third parties." *Id.* (internal quotation marks omitted). "Only then is equitable mootness a consideration." *Id.* at 320.

18

Appellees argue that many courts have applied the equitable mootness doctrine outside of the context of an appeal from plan confirmation. (D.I. 62 at 14-15; *see also, e.g.*, *In re Villaje del Rio, Ltd.*, 283 F. App'x 263, 265 (5th Cir. 2008) (holding "equitable mootness exists and an appeal must be dismissed when a party attacking a bankruptcy order approving foreclosure fails to obtain a stay of the foreclosure pending appeal" because otherwise "appellate courts would be able to reverse duly authorized foreclosures and create havoc in bankruptcy administration").

Appellant is asking that certain economic benefits distributed to secured and unsecured creditors in the Paragon Cases be disgorged and given to Paragon Parent's equity holders. However, in the view of Appellees, this proposed remedy cannot be accomplished through a reversal of the Appealed Orders. Instead, because the Consolidated Appeal is nothing more than a continued attack on Paragon Parent's substantially consummated Plan, Appellees argue it should be dismissed as equitably moot.

The Third Circuit has indicated that application of the equitable mootness doctrine is limited to appeals following confirmation of a Chapter 11 plan. Therefore, the doctrine would not seem to apply to appeals in the Prospector Cases. In *SemCrude*, 728 F.3d at 317, the Third Circuit observed: "Equitable mootness comes into play in bankruptcy (so far as we know, its only playground) after a plan of reorganization is approved." While taking note of bankruptcy court application of equitable mootness outside of the appellate context, the Third Circuit took "no position on whether use of the doctrine there is appropriate." *Id.* at 317 n.1 (citing *Innovative Clinical Solutions*, 302 B.R. 136, 141-42 (Bankr. D. Del. 2003), which dismissed complaint seeking revocation of plan confirmation under § 1144 based on equitable mootness). In *In re Jevic Holding Corp.*, 787 F.3d 173, 186 (3d Cir. 2015), Judge Scirica, in a concurring opinion, stated: "We recently made clear in *SemCrude*, . . . that th[e] [equitable mootness] doctrine applies only where there is a confirmed plan of reorganization." Here, because no plan was confirmed in the

19

Prospector Cases, and because the Court has already determined that Appellant lacks appellate standing, the Court will not dismiss on the alternative basis that the Consolidated Appeal is equitably moot.

## V. CONCLUSION

Appellant is not a person aggrieved by the Appealed Orders and therefore lacks standing to prosecute the Consolidated Appeal. For the foregoing reasons, the Court will grant the Motion to Dismiss. The Court will also deny Appellant's "Motion for Summary Judgment." An appropriate Order follows.

March 12, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE